IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DEBBIE G. HARRISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:10-cv-767-TFM |
| | ) | [wo] |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Debbie G. Harrison ("Plaintiff" or "Harrison") originally applied for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq*., on September 8, 2006. Tr. 13. After being denied, Harrison timely filed for and received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision on August 27, 2008. Tr. 22. Harrison subsequently petitioned for review to the Appeals Council who rejected review of Harrison's case on August 13, 2010. Tr. 1. As a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *Id.* Judicial review proceeds pursuant to 42 U.S.C. § 405(g), and 28 U.S.C. § 636(c). After careful scrutiny of the record and briefs, for reasons herein explained, the Court AFFIRMS the Commissioner's decision.

## I. NATURE OF THE CASE

Harrison seeks judicial review of the Commissioner's decision denying her

application for disability insurance benefits.  United States District Courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence.  42 U.S.C. § 405.  The court may affirm, reverse and remand with instructions, or reverse and render a judgment.  *Id*.

## II. STANDARD OF REVIEW

The Court's review of the Commissioner's decision is a limited one.  The Court's sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied.  *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'"  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. §405(g)).  Thus, this Court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district

court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The Court will also reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

### III. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement,

provided they are both insured and disabled, regardless of indigence.[1]  *See* 42 U.S.C. §

423(a).  The Social Security Act's Supplemental Security Income ("SSI") is a separate

and distinct program.  SSI is a general public assistance measure providing an additional

resource to the aged, blind, and disabled to assure that their income does not fall below

the poverty line.[2]  Eligibility for SSI is based upon proof of indigence and disability.  *See*

42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C).  However, despite the fact they are separate

programs, the law and regulations governing a claim for DIB and a claim for SSI are

identical; therefore, claims for DIB and SSI are treated identically for the purpose of

determining whether a claimant is disabled.  *Patterson v. Bowen*, 799 F.2d 1455, 1456 n.

1 (11th Cir. 1986).  Applicants under DIB and SSI must provide "disability" within the

meaning of the Social Security Act which defines disability in virtually identical language

for both programs.  *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§

404.1505(a), 416.905(a).  A person is entitled to disability benefits when the person is

unable to

> Engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous
> period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is one

resulting from anatomical, physiological, or psychological abnormalities which are

---

[1] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html
[2] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues.  *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42

U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation

process to determine whether a claimant is entitled to benefits.  *See* 20 C.F.R. §§

404.1520, 416.920 (2010).

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment(s) severe?
>
> (3) Does the person's impairment(s) meet or equal one of the specific impairments
>
>> set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[3]
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4.  *See Phillips v. Barnhart*,

357 F.3d 1232, 1237-39 (11th Cir. 2004).  Claimants establish a prima facie case of

qualifying disability once they meet the burden of proof from Step 1 through Step 4.  At

Step 5, the burden shifts to the Commissioner, who must then show there are a significant

number of jobs in the national economy the claimant can perform.  *Id*.

---

[3] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or hear testimony from a vocational expert (VE). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

### IV.   ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Harrison, age 46 at the time of the hearing, has completed the eighth grade and has no reading or writing limitations. Tr. 27. Harrison performed past relevant work as a waitress (semi-skilled, light) and cashier (unskilled, light).   Tr. 34. Harrison has not engaged in substantial gainful work activity since her alleged disability onset date of September 3, 2004. Tr. 15. Harrison last met the insured status requirements of the

---

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

Social Security Act on December 31, 2008.  *Id.*  Harrison claims she is unable to work because of pain in her lower back, right shoulder, feet, and right hip extending down her right leg.  Tr. 29, 117.  All of Harrison's alleged disabilities stem from two back surgeries, the second was a back fusion.  Tr. 17.  Harrison rates her average daily pain as a level seven to eight on a ten point scale with ten being the highest level of pain.  *Id.*

Harrison received treatment from various medical practitioners and the ALJ considered the medical records from these practitioners.  Tr. 17-20.  The records from Andalusia Regional Hospital show that Harrison suffered from a L5-S1 disk herniation and underwent lumbar decompression surgery.  Tr. 17.  On September 9, 2004, Harrison also underwent a lumbar provocative discography which revealed a L5-S1 herniated nucleus pulposus status post lumbar laminectomy, intractable back pain, and right lower extremity pain.  Tr. 17-18.  In subsequent attempts to alleviate the pain over the next few years, Harrison underwent several epidural steroid injections.  Tr. 18-19.

Harrison underwent an uneventful decompression surgery at Mizelle Memorial Hospital on September 28, 2004.  Tr. 18.  Harrison suffered postoperative pain and received treatment for postoperative anemia, migraine headaches, and reflux.  *Id.*  Harrison was discharged a week later on October 5, 2004.  *Id.*  Harrison returned to Mizelle Memorial Hospital on February 6, 2006 due to nausea and vomiting, caused by gastroenteritis.  *Id.*

Harrison began to see Dr. Robert M. Williams on November 10, 2004, at which time an x-ray of her lumbar spine "showed prior surgery and no acute bony change seen," but the x-ray indicated a fracture to her left rib.  *Id.*  Harrison saw Dr. Williams through

February 10, 2006, for various ailments such as non-cardiac chest pain, bronchitis, right leg pain, and neck pain.  *Id.*

Dr. Ann L. Jacobs, a licensed psychologist, saw Harrison on December 13, 2006 at the request of the Social Security Administration ("SSA").  *Id.*  Dr. Jacobs discussed Harrison's daily activities and her health problems, including all of her medications, and depressive symptoms.  Tr. 18-19.  Harrison said she was not depressed and that she has never been hospitalized or received counseling for depression.  Tr. 18.  Dr. Jacobs reported that Harrison's "mood was sad and her affect was in normal range."  *Id.*  Harrison reported trouble sleeping.  *Id.*  Harrison reported that her medications do nothing for her pain, but also that she is happy with her medication and benefitted from them.  Tr. 18-19.  Dr. Jacobs reported that Harrison's concentration, attention, and fund of information were good, memory functions were intact, and she was able to think abstractly.  Tr. 18.  Dr. Jacobs found Harrison's intelligence to be average.  *Id.*  Dr. Jacobs opined that Harrison suffered from major depression, as well as recurrent, mild, and chronic pain disorder.  *Id.*

Dr. Lori L. Stanfield, a family practitioner with Opp Family Medicine, saw Harrison several times between February 9, 2005 and April 3, 2007. Tr. 19.  On her first visit, Harrison discussed her insomnia, chronic sinusitis, chronic back pain, and side effects of her pain medications, including nausea.  *Id.*  Dr. Stanfield took Harrison off Ambien, Lipitor, and Nexium and prescribed Flexeril, Phenergan, Premarin, Restoril, and Zocor.  *Id.*  Harrison's subsequent visits were routine visits including nasal congestion, ear pain, headaches, lesions on her forearm and right hand due to dermatofibroma, and

lower abdomen pains due to urinary conditions.  *Id.*  On February 5, 2007, Harrison presented more serious symptoms of abdominal pain with associated nausea and vomiting, as well as left arm pain and palpitation.  *Id.*  Dr. Stanfield diagnosed Harrison with gastroesophageal reflux disease and prescribed medication, specifically noting that her exam was "within normal limits."  *Id.*

On September 11, 2007, Harrison was examined by a neurologist, Dr. Kanhaiyalal Trivedi, who conducted multiple nerve tests and an EMG exam.  *Id.*  Dr. Trivedi found "evidence suggestive of mild median neuropathy consistent with mild carpal tunnel syndrome on the right side."  *Id.*

Harrison began treatment with Anesthesiologist Dr. Jeff L. Buchalter on April 7, 2005.  *Id.*  On Harrison's first visit, Dr. Buchalter found that Harrison's lumbar spine showed "decreased range of motion on flexion and extension with right-sided paraspinal spasm" with an antalgic gait.  *Id.*  Dr. Buchalter found Harrison to be a candidate for "repeat epidural injections below her fusion site."  *Id.*  On January, 18, 2007, Dr. Buchalter diagnosed Harrison with "lumbago, lumbar spondylosis and intervertebral disc protrusion," and administered another epidural steroid injection.  *Id.*  Through June 5, 2008, Harrison's remaining follow-up visits with Dr. Buchalter were in regard to her complaints of persistent lower back and lower extremity pain.  *Id.*  Dr. Buchalter found minimal improvement from the lumbar fusion, marked relief of her tailbone pain from the epidural injections, no lower extremity edema, no gross abnormalities, and no new onset of weakness, numbness, tingling, bowel, or bladder dysfunction.  *Id.*  Dr. Buchalter then discussed alternative treatments with Harrison including "conservative care such as

medication management, physical therapy, home exercise and modalities." as well as other types of injective treatments and surgical treatment consults.  Tr. 19-20.

Dr. Clark S. Metzger, an orthopaedic specialist, treated Harrison from October 17, 2002 through December 27, 2007 for "follow-up of her back surgery and residual low back pain, leg and hip pain."  Tr. 20.  Dr. Metzger ordered multiple epidural injections at different times because of right shoulder AC joint arthritis and trochanteric bursitis, left shoulder rotator cuff tendonitis/impingement syndrome, right elbow lateral epicon dylitis, right hip greater trochanteric burisits, as well as for general pain relief in her joints.  *Id.* Dr. Metzger noted after an examination that Harrison had "5/5 strength in all upper and lower extremity motor groups," and her sensory was "grossly intact."  *Id.*

The ALJ found that the medical record as a whole indicates that Harrison has residual pain from two back surgeries.  Tr. 20.  The ALJ specifically noted that the epidural injections gave Harrison "marked relief of her tailbone pain," that Harrison has full strength in her upper and lower extremity motor groups, that there is "no clear medical evidence or treating source opinions regarding [Harrison's] functional limitations," and that there is nothing in the record to establish it is medically necessary to limit her activities.  *Id.*  The ALJ found that the evidence supports that Harrison is limited to "light exertional activity."  *Id.*  The ALJ notes that although Harrison was diagnosed with major depression, Harrison denied being depressed and mentioned that her depression was in remission.  *Id.*  The ALJ also noted that she has been on antidepressant medication for "about 5 or 6 years," but that she has not received any hospitalization or any counseling for depression.  *Id.*  Therefore, the ALJ found that Harrison's

"medications appear to adequately control her symptoms, as no further treatment has been recommended or sought." *Id.*   The ALJ found that the "medical record supports that [Harrison] would only be limited to work involving only very short and simple instructions and little public contact." *Id.*

## V.   ISSUES

Harrison raises two issues for judicial review:

(1)  Whether the ALJ failed to consider the effects of Harrison's medications on her ability to work; and

(2) Whether the ALJ failed to resolve the conflict between the VE's testimony and the Dictionary of Occupational Titles ("DOT") in compliance with SSR 00-4p.

*See* Doc. 13 at 3.

## VI.   DISCUSSION

**A.    The ALJ properly considered the effects of Harrison's medications on her ability to work.**

Harrison argues that the ALJ failed to consider the effects of Harrison's medications on her ability to work. *See* Doc. 13 at 4.  Harrison asserts that despite the ALJ's clear references to the medications and Harrison's testimony regarding the side effects, the ALJ "failed to reach a determination as to the side effects" of Harrison's medication. *Id.*   The Court finds that in evaluating a claimant's symptoms, the ALJ properly considered the other required relevant factors including "[t]he type, dosage, effectiveness, and side effects of any medication" that the claimant takes or has taken to alleviate the claimant's pain or other symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(iv).

Regarding the side effects of her medication, Harrison testified that for pain management she takes Lortab, Ultram, Neuronton, Zoloft, and Phenergan.  Tr. 28-29. Harrison takes Phenergan to offset the nausea from Lortab.  Tr. 29.  Cumulatively, Harrison claims her medicines make her drowsy.  Tr. 29.  Lastly, Harrison testified that she has trouble concentrating that is "probably" caused by her medication.  Tr. 32.

The Court finds that the record shows the ALJ heavily references Harrison's medications and the side effects caused by them.   The ALJ considered Harrison's testimony that she has trouble with concentration because of her medication, but found that Dr. Jacobs' report indicated that Harrison's "concentration and attention were good." Tr. 16, 18.  Therefore, the ALJ found that "[w]ith regard to concentration, persistence, or pace, [Harrison] has mild difficulties."  Tr. 16.  Harrison does not dispute Dr. Jacobs' assessment; however, Harrison asks the court to take notice that on the day of that visit she had not taken Lortab prior to her consultation with Dr. Jacobs.  *See* Doc. 13 at 6.

It is the duty of the ALJ to develop a full and fair record.[5]  *Ellison,* 355 F.3d at 1276.  The burden of proving disability still rests on the claimant, and the claimant is responsible for producing evidence that supports her claim and allows the ALJ and the Commissioner to reach the proper conclusion.  *Id*.; *see also* 20 C.F.R. § 416.912(a).  The record is replete with extensive treatment records from 2002 through 2008; however, the only medical record from a doctor which discusses Harrison's concentration was from Dr. Jacobs on December 13, 2006.  Tr. 18.  Harrison asserts that Dr. Jacobs' assessment is not accurate because she had not taken Lortab the day of that visit, but the extensive

---

[5] The ALJ will develop a claimant's complete medical history for at least the 12 months preceding the month in which the claimant's application is filed. *See* 20 C.F.R. § 416.912(d).

treatment records do not show any other consultations regarding Harrison's concentration. *See* Doc. 13 at 6. As mentioned, the burden of proof is on Harrison to produce evidence required for the ALJ to reach the proper conclusion. *Ellison,* 355 F.3d at 1276. Harrison failed to present any evidence that refutes Dr. Jacobs medical assessment that Harrison's "concentration and attention were good." Tr. 18. Once again, "a clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562 (citing *MacGregor*, 786 F.2d at 1054).

The ALJ noted that Harrison told Dr. Jacobs that she is not as ill and she is better able to cope with the use of her antidepressant medication. Tr. 18. Dr. Jacobs also noted that with regard to her mental health, Harrison reported that "she was satisfied with her medications and found benefit from the medications." Tr. 19. "When there have been nonexertional factors (such as depression and medication side effects) alleged, the preferred method of demonstrating that the claimant can perform specific jobs is through the testimony of a vocational expert." *MacGregor*, 786 F.2d at 1054 (citing *Cowart v. Schweiker*, 662 F.2d 731, 736 (11th Cir.1981)).

Next, the ALJ considered Harrison's reports to Dr. Stanfield about the nausea side effects of her medications. Tr. 19. On February 9, 2005, Dr. Stanfield considered Harrison's report of nausea and decided the course of action was to discontinue Harrison's use of Ambien, Lipitor, and Nexium. *Id.* In their place, Dr. Stanfield prescribed Flexeril, Phenergan, Premarin, Restoril, and Zocor. *Id.* Since this date there have been no further complaints of nausea to any other treating physician. Tr. 16-19. For

the Court to find that the ALJ's decision regarding the side effects of medication is not

supported by substantial evidence, the alleged side effects must be adequately

documented in the record.  *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir.1990).

Where the record contains only an isolated mention of the side effects to a treating

physician and where the record does not contain any concerns about side effects from the

treating physicians, then substantial evidence supported the ALJ's determination that the

effects do not present a significant problem.  *Id.*  Here, Harrison's reports of side effects

are limited to February, 2005.  In response Dr. Stanfield replaced the medication causing

the nausea with other medications.  Apparently, the switch was successful because

Harrison did not further complain about nausea to any other physician.

The ALJ also considered Harrison's testimony that her medications make her

drowsy. Tr. 17.  Harrison has failed to develop the record with evidence to support that

her drowsiness affects her ability to work.  *Swindle*, 914 F.2d at 226.  The only mention

that Harrison's medication causes her to be drowsy is her own subjective testimony.  Tr.

29.  "A claimant's subjective testimony supported by medical evidence that satisfies the

pain standard is itself sufficient to support a finding of disability."  *Foote v. Chater*, 67

F.3d at 1561; *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (stating that

the pain standard is applicable to complaints of subjective conditions other than pain).  If

the ALJ "discredits subjective testimony, he must articulate explicit and adequate reasons

for doing so."  *Wilson v. Barnhart*, 284 F.3d 1219, 1225.

Here, the ALJ found that there is no clear medical evidence or treating source

opinion regarding Harrison's functional limitations, and there is nothing in the record that

says she has to limit her activities.  Tr. 20; *see also Colon ex rel. Colon v. Comm'r of Soc. Sec.*, 411 Fed. Appx. 236, 238 (11th Cir. 2011) (holding that substantial evidence supports the ALJ's decision to discredit claimant's complaints related to medication side effects because none of claimant's doctors reported any side effects from his medications, and he did not complain to them of any side effects).  The ALJ also found that "[Harrison's] medications appear to adequately control her symptoms."  Tr. 20.  In addition, while analyzing Harrison's functional limitations the ALJ found that her "ability to perform all or substantially all of the requirements of this level of work has been impeded by *additional limitations*."  Tr. 21 (emphasis added).

The Court finds that the ALJ properly considered the side effects of Harrison's medication, and the ALJ's decision is supported by substantial evidence in the record.

**B.      The ALJ properly resolved the conflict between the VE's testimony and the DOT in compliance with SSR 00-4p.**

Harrison argues that the ALJ failed to resolve a conflict that exists between the VE's testimony and the DOT in compliance with SSR 00-4p.  *See* Doc. 13 at 7.  Harrison asserts that the ALJ's finding that Harrison has "the capacity to perform light work . . . involving no more than [. . .] only very short and simple instructions" is not consistent with ALJ's acceptance of the VE's testimony regarding the jobs existing in the national economy that Harrison could perform.  *Id.*  The VE testified that Harrison could perform jobs such as an assembler, miscellaneous food preparer, and surveillance system monitor. *Id.*  Harrison asserts that the "very short and simple instructions" designation made by the ALJ would result in a General Education Development reasoning level of one under the

DOT.  *Id.* at 8.  On the other hand, the jobs that the VE testified Harrison could perform

range from a reasoning level of two to three.  *Id.*  Harrison argues that the ALJ failed to

resolve this inconsistency, and that she is not able to perform the jobs identified by the

VE.  *Id.*

The court in *Leonard v. Astrue* provided a helpful outline of SSR 00-4p in relation

to a conflict between a VE's testimony and the DOT:

> In SSR 00-4p, the [SSA] recognized that the VE's testimony should
> generally be consistent with the information contained in the *DOT*.  *See*
> SSR 00-4p.  Accordingly, when an apparent conflict between the two arises,
> the SSR directs that the ALJ "must elicit a reasonable explanation for the
> conflict before relying on the VE['s testimony]."  *Id.*  Moreover, the ALJ is
> obligated to inquire on the record as to whether there are any
> inconsistencies between a VE's testimony and the *DOT*.  *See id.*  In
> addition, before the ALJ can rely on the VE's testimony as substantial
> evidence for his or her determination, he or she must resolve any conflict
> between the VE's testimony and the *DOT*.  *See id.*  SSR 00-4p provides that
> "[t]he adjudicator will explain in the determination or decision how he or
> she resolved the apparent conflict."  *Id.*  It also indicates that "[t]he
> adjudicator must explain the resolution of the conflict irrespective of how
> the conflict was identified."  *Id.*

*Leonard v. Astrue*, 487 F. Supp. 2d 1333, 1338-39 (M.D. Fla. 2007), *aff'd Leonard v.*

*Comm'r of Soc. Sec.*, 409 F. App'x 298 (11th Cir. 2011).

However, it has been found that "[e]ven assuming that an inconsistency existed

between the testimony of the vocational expert and the DOT, the ALJ did not err when,

without first resolving the alleged conflict, he relied on the testimony of the vocational

expert."  *Miller v. Comm'r of Soc. Sec.*, 246 F. App'x 660, 662 (11th Cir. 2007); *see also*

*Wilds v. Comm'r of Soc. Sec.*, 322 F. App'x 800, 801 (11th Cir. 2009) (holding that if a

conflict had existed, the administrative law judge would have been entitled to rely on the

testimony of the vocational expert).   The Eleventh Circuit adopted the Sixth Circuit's view and held that the "VE's testimony 'trumps' the DOT."   *Jones*, 190 F.3d at 1230 (11th Cir. 1999).  Although the *Jones* ruling was issued prior to the promulgation of SSR 00-4p, this Court has found that the "promulgation of SSR 00-4p does not [ ] undo the rule in *Jones* nor does the ruling by its own wording, mandate that an ALJ has a duty to independently investigate whether there is a conflict between the VE's testimony and the DOT." *Campbell v. Astrue*, 2010 WL 3362230, *7 (M.D. Ala. 2010) (quoting *Garskof v. Astrue,* 2008 WL 4405050, *5 (M.D. Fla. 2008).  The reason SSR 00-4p does not undo the rule in *Jones* is because an "agency's ruling does not bind this court." *B. B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. 1981).[6]

Here, the ALJ clearly asked the VE: "[a]re those answers consistent with the information provided in the [DOT]?"  Tr. 36.  To which the VE responded "[y]es, Your Honor."  *Id.*  The ALJ even provided Harrison's counsel with the option to question the VE which would have been an opportune time to raise the issue of such a conflict to the ALJ's attention; however, no questions were asked.  Tr. 38.  Accordingly, the Court finds that the ALJ properly inquired as to whether there was a conflict between the VE's testimony and the DOT, and was under no further duty to independently investigate the issue without more.

---

[6] A decision of the Unit B panel of the Former Fifth Circuit is regarded an as binding precedent which should be followed absent Eleventh Circuit en banc consideration. *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).

## VII. CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law.  It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.**   A separate judgment is entered herewith.

DONE this 14th day of November, 2011.

> /s/ Terry F. Moorer
> TERRY F. MOORER
> UNITED STATES MAGISTRATE JUDGE